

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**13 CIV 3058**

-----------------------------------------------------------

L.P., individually and o/b/o R.G.,

                    Plaintiffs,

    - against -

New York City Department of Education,

                    Defendant.

**COMPLAINT**

RECEIVED
MAY - 6 2013
U.S.D.C. S.D. N.Y.
CASHIERS

-----------------------------------------------------------

    Plaintiffs L.P., on behalf of her son, R.G. by their attorneys, Mayerson & Associates, as and for their Complaint against defendant, the New York City Department of Education, allege and state the following:

    1. Plaintiff R.G., the son of plaintiff L.P, is a minor child with autism, who presents with a variety of significant deficits and interfering behaviors. R.G.'s deficits are pervasive and global and they transcend behavioral, communication, social and physical domains. R.G. was at all relevant times, and still is, a student residing within New York City who is entitled to all rights, entitlements, and procedural safeguards mandated by applicable law and statutes including, but not limited to the Individuals with Disabilities Education Improvement Act ("IDEIA," more commonly known as "IDEA"), 20 U.S.C. § 1400, *et seq.*, the pertinent implementing regulations promulgated under the Code of Federal Regulations, Article 89 of the New York State Education law and Part 200 of the Commissioner's Regulations.

    2. At all relevant times, plaintiffs have resided and continue to reside within the City of New York, within this judicial district.

    3. Plaintiffs, though known to defendant, are not expressly named herein by their given names or specific address because of the privacy guarantees provided in the IDEA statute, as

well as in the Family Educational Rights Privacy Act, 20 U.S.C. § 1232(g) and 34 C.F.R. § 99. Upon the request of this Court, plaintiffs are prepared to disclose such information on an *in camera* basis.

4. Defendant, upon information and belief, is a duly constituted school district organized under the laws of the State of New York, and is the "local education agency" charged with the obligation to provide R.G. with a free appropriate public education ("FAPE").

### THE RELIEF BEING SOUGHT

5. This action is brought pursuant to the fee-shifting provisions of 20 U.S.C. § 1400, *et seq.*, ("IDEA") and, in particular, 20 U.S.C. §§ 1415. This action follows a *thirteen-day* trial that resulted in a hearing officer's decision, on the merits, in *plaintiffs'* favor. This action also follows defendant's *unsuccessful* appeal of that decision to New York State's "State Review Office" ("SRO"). Defendant's appeal to the SRO <u>affirmed</u> the IHO's finding that the defendant failed to offer R.G. a FAPE, that the Rebecca School was an appropriate placement, and that there were no equitable circumstances to diminish or preclude the tuition funding that was sought. The SRO even reversed the IHO, *in plaintiffs' favor,* on plaintiffs' cross-appeal for reimbursement for "independent evaluations." As a result, after two levels of litigation, plaintiffs certainly have now achieved "prevailing party" status for purposes of IDEA's fee-shifting provisions.

6. This action is being brought to secure statutory attorneys' fees and costs that plaintiffs should be awarded in this fee application action and in the two underlying administrative proceedings, as a "prevailing party" pursuant to the express fee-shifting provisions of the federal IDEA statute, 20 U.S.C. §§ 1415(i)(3)(A)-(G).

## JURISDICTION AND VENUE

7. This Court, pursuant to 20 U.S.C. §§ 1415(i)(2) and (3), 34 C.F.R. §§ 300.516 and 300.517, 28 U.S.C. §§ 1331 and 1367, has jurisdiction of this action without regard to the amount in controversy. Venue is proper in that plaintiffs and defendant reside in or are situated within this judicial district.

## FACTUAL BACKGROUND

8. Pursuant to the IDEA statute, as well as the New York State Education Law, all school agencies within the State are required to offer eligible students with disabilities special education programs and services that are tailored to meet the individual needs of each child with a disability. The FAPE required under IDEA will be different for each child, as IDEA does not permit a "one size fits all" approach.

9. On or about September 14, 2011, plaintiffs initiated an administrative, due process proceeding against defendant in order to secure reimbursement and other related funding relief based upon defendant's failure to provide R.G. with a FAPE for purposes of the 2011-2012 school year.

10. After the appointment of a specially trained and highly experienced impartial hearing officer ("IHO"), Amy Itzla, the hearing was first convened on October 18, 2011 to determine the student's pendency (stay put) placement (T. 1-9). In an Interim Order on Pendency dated November 22, 2011, the impartial hearing officer determined that the special education program and services provided in the prior uncontested IEP constituted the student's pendency placement and issued an order to that effect. Interim Order. at p. 3. IHO Itzla then recused herself, and after the appointment of another specially trained and highly experienced hearing officer, Mindy Wolman, the impartial hearing reconvened the hearings on January 3, 2012.

11. On the merits, the parties then put on their respective cases during the course of a *thirteen* day trial that took place between October 18, 2011 and June 27, 2012. Defendant's case in chief alone consumed seven hearing dates and another day for its rebuttal case, for a total of eight hearing days.

12. The trial involved numerous witnesses, 1,748 pages of testimony (including expert witness testimony) and 118 exhibits.

13. After the parties had rested their respective cases, the IHO invited the parties to exchange written closing statements (simultaneously submitted on July 26, 2012), and an additional plaintiffs' post hearing brief that was submitted on July 31, 2012.

14. In a 28-page "Findings of Fact and Decision" dated August 13, 2012, and corrected on September 9, 2012, the hearing officer ordered defendant to fund R.G.'s tuition at the Rebecca School and held for plaintiffs on all three prongs of the Burlington/Carter test. *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993); *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985).

15. The IHO, *inter alia*, made the following core findings that defendant had failed to provide R.G. with a FAPE:

- Having carefully considered the testimony of all witnesses (and assessing the credibility and reliability of their testimony) and of the documentary evidence, I am not persuaded that the Student actually made any meaningful progress during the last two years in the 6:1:1 class with the levels of related services provided. IHO Dec., p. 6

- A review of the ABLLS[1] assessment performed by Ms. Yang (DOE Exh. 11) reveals that between October and March of the 2010-2011 school year, the student made minimal progress in making requests, labeling, intraverbals, social interaction, group instruction, and reading, dressing and no progress whatsoever in spontaneous vocalization, syntax/grammer and eating. IHO Dec. p. 7

---

[1] ABLLS is an acronym for the "Assessment of Basic Language and Learning Skills."

- The Student's reading and math skills do not appear to have improved during 2009-2010 and 2010-2011 school years in the 6:1:1 class at P. 231. IHO Dec. p. 7

- In light of those reports and the recommendations contained therein, and in light of the minimal (if any) progress that the Student made in the P.321 6:1:1 with the goals and services mandates of his prior IEPs, I cannot find that the CSE's June 7, 2011 program recommendations were reasonably calculated to allow the Student to receive meaningful benefits. IHO Dec. p. 8

- The Student needed to receive a substantially higher level of occupational therapy and speech therapy. The IEP did not address his sensory integration issues and his need for sensory input throughout the day. The student needed frequent vestibular and proprioreceptive input in order to remain engaged in instruction and to be able to attend in the classroom (Tr. At 685). The CSE's recommended program and placement would not have addressed the Student's sensory integration issues and his sensory regulation difficulties. IHO Dec. p. 8

- His sensory integration issues are not limited to the times when he is receiving occupational therapy. As such, an educational program and placement which limits sensory input to three times per week in occupational therapy would not address his needs. IHO Dec. p. 8

- This instructional methodology was not effective for the Student because he is not capable of working independently and high rates of interfering behaviors (Tr. 1259-60). IHO Dec. p. 9-10

- It is clear from his teacher and service providers that he still requires prompts for most things. On this basis alone, it is clear that the P. 231 6:1:1 program utilizing the TEACCH methodology, is not appropriate for the Student. IHO Dec. p. 10

- The DOE's own documentation regarding the TEACCH methodology therefore makes clear that it is inappropriate for the Student. He should not be placed in a class that utilizes the TEACCH methodology. It is therefore not surprising that he made minimal educational progress during the last few years at P.231. IHO Dec. p. 10

- THE CSE's failure to include parent counseling and training in the Student's IEP was inappropriate and constituted a substantial FAPE deprivation. IHO Dec. p. 10

- I also find that the CSE's program and placement recommendations did not provide for the generalization of skills to the home environment, and did not sufficiently address ADL skills. IHO Dec. p. 11

- The CSE has an obligation to share information with Parents. Instead, the CSE that met to prepare the June 2011 IEP specifically and intentionally withheld information from the Parent. The intentional withholding of evaluation and assessment date deprived the Parent of the opportunity to meaningfully participate in the Student's IEP meeting. As such, it constitutes a FAPE deprivation that goes beyond a mere procedural irregularity. IHO Dec. p. 11

- The Student's program at the Rebecca School is tailored to meet his individual and unique special education needs. Based on the unrebutted and credible testimony of the Rebecca School staff, and upon my review of the Rebecca School Interdisciplinary Report of Progress (Parent Exh. L.), I find that the Parent met her burden of establishing that the Rebecca School provided instruction specifically designed to meet the Student's special education needs. IHO Dec. p. 14

- The Rebecca School program is designed to address all of the Student's communication delays (receptive language, expressive language, and pragmatic language). It also addresses his socialization issues. The Student's program at the Rebecca School includes services to address his ADL and self-help delays. IHO Dec. p. 14

- The Rebecca School program has provided the Student with an appropriate level of occupational therapy and speech and language therapy during the school day. As such, he has been making progress in the program. IHO Dec. p. 14

16. At pages 20-21 of the IHO's August 13, 2012 Decision (corrected as to exhibit list on September 9, 2012), the IHO directed defendant to, *inter alia*, fund R.G.'s 2011-2012 tuition at the Rebecca School in the amount of $78,960.

17. Despite a compelling evidentiary record and detailed fact finding by the IHO, defendant elected to prosecute a full-blown appeal (on the merits) to the Office of State Review. As a result, plaintiffs were required to submit detailed response papers in opposition to defendant's appeal. Plaintiffs also cross-appealed.

18. In a Decision dated April 4, 2013, the SRO <u>affirmed</u> the IHO's award of tuition funding for R.G.'s attendance at the Rebecca School. The SRO also reversed the IHO *in R.G.'s favor* by

granting, in part, plaintiffs' cross appeal awarding R.G. reimbursement for "independent evaluations," *i.e.* relief that the IHO had neglected to award. There have been no further appeals to date, and thus, plaintiffs have emerged from the two administrative proceedings as a "prevailing party." *See E.S. v. Katonah-Lewisboro Sch. Dist.*, No-10-4446-cv, 2012 U.S. App. LEXIS 13811 (2d Cir. July 6, 2012); *Millea v. Metro-N. R.R.*, 658 F.3d 154 (2d Cir. 2011).

19. This action is timely brought, as there is an applicable *three-year* statute of limitations as to fee claims.

20. Under the fee-shifting provisions of the IDEA statute, plaintiffs should be awarded their reasonable attorneys' fees and other recoverable costs at the IHO level, the SRO level, and in this fee application action, *presently* in the sum of not less than $101,308.52.

WHEREFORE, by reason of the foregoing, this Court should: (a) declare plaintiffs to be the "substantially prevailing party"; (b) fix and award plaintiffs' statutory attorneys' fees and related costs and disbursements from the IDEA due process proceeding, defendant's unsuccessful appeal to the SRO, and costs in preparing this action, in an amount not less than $101,308.52, plus any additional fees and interest as this Court may allow for work and costs recorded in this action; and (d) award plaintiffs such other, different and further relief as this Court deems proper.

Dated:   May 6, 2013
         New York, New York

                                                       Gary S. Mayerson (GSM 8413)
                                                      Tracey Spencer Walsh (TW 2746)
                                                      Mayerson & Associates
                                                      330 West 38th Street, Suite 600
                                                      New York, New York 10018
                                                      (212) 265-7200
                                                      (212) 265-1735 (facsimile)